**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**VICTOR SAMUEL ORELLANA ALVAREZ,**

**Petitioner,**

**v.** **Civil Action No. 3:26cv618**

**JEFFREY CRAWFORD, *et al.*,**

**Respondents.**

**MEMORANDUM OPINION**

Victor Samuel Orellana Alvarez, a federal immigration detainee currently being held in the Farmville Detention Center ("Farmville"), proceeding *pro se*, submitted a 28 U.S.C. § 2241 Petition ("§ 2241 Petition," ECF No. 1).[1] Petitioner challenges his detention by Immigration and Customs Enforcement ("ICE"). Respondents have filed an Opposition. (ECF No. 5.) Petitioner filed a response. (ECF No. 6.) For the reasons set forth below, the § 2241 Petition will be dismissed as moot.

---

[1] The statute provides, in pertinent part:

(c) The writ of habeas corpus shall not extend to a prisoner unless—

> (1) He is in custody under or by color of the authority of the United States or is committed for trial before some court thereof; or
>
> (2) He is in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States; or
>
> (3) He is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2241(c)(1)–(3).

## I. Factual and Procedural History

### A. Factual Background

Petitioner provides very little information in his § 2241 Petition and the Court necessarily relies on a submission filed by Respondents, namely a sworn statement (ECF No. 5-1). "Petitioner is a 27-year-old native and citizen of El Salvador." (ECF No. 5-1 ¶ 5.)[2] Petitioner states that he came to the United States alone as a minor and has lived here for ten years. (ECF No. 1-1, at 1.) He asserts that removal would cause extreme distress to his mental health and family and his life will be at risk in his home country. (*Id.*)

> 6. On December 31, 2015, Customs and Border Protection ("CBP") agents encountered Petitioner in or near Hidalgo, Texas. The CBP agents determined Petitioner had unlawfully entered the United States from Mexico without being admitted or paroled by an immigration officer. Petitioner was served with a Notice to Appear ("NTA"), which charged him with being inadmissible to the United States (and thus removable from the United States) under 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General. Petitioner was taken into custody of the Office of Refugee Resettlement ("ORR")[3] pending further placement.
>
> 7. On January 29, 2016, Petitioner was reunified with his sponsor and released from ORR custody on his own recognizance.
>
> 8. On December 14, 2016, Petitioner filed Form I-589, Application for Asylum and for Withholding of Removal with the Immigration Court. The Immigration Judge administratively closed Petitioner's case for Petitioner to pursue his application before U.S. Citizenship and Immigration Services ("USCIS")[4].
>
> 9. On July 16, 2025, DHS filed a Motion to Recalendar before the Immigration Judge.
>
> 10. On August 26, 2025, the Immigration Judge granted the Motion to Recalendar.
>
> 11. On October 24, 2025, [Enforcement and Removal Operations ("ERO")] received an Immigration Alien Query ("IAQ") for Petitioner after he was arrested and charged with Felony Driving While Intoxicated in violation of Va.

---

[2] The Court employs the pagination assigned by the CM/ECF docketing system.

[3] Petitioner entered the United States at 17-years-old [sic] and was designated as an Unaccompanied Alien Child ("UAC")[.]

[4] Petitioner never filed Form I-589, Application for Asylum and for Withholding of Removal before USCIS.

> Code Ann. § 18.2-266 and Giving False Identity to a Law Enforcement Officer in violation of Va. Code Ann. § 19.2-82.1. After confirming Petitioner's identity and immigration history, ERO lodged a detainer.
>
> 12. On March 2, 2026, Petitioner was convicted of Driving While Intoxicated – Third Offense within 10 Years with BAC .15 to .20[] in violation of Va. Code Ann. § 18.2-266 and Giving False Identity to a Law Enforcement Officer in violation of Va. Code Ann. § 19.2-82.1. Petitioner was sentenced to a total of 6 years confinement with 5 years and 4 months suspended.
>
> 13. On March 6, 2026, ERO took Petitioner[] into civil immigration custody immediately following his release from local custody. Petitioner was served with Form I-200, Warrant for Arrest of Alien and Form I-286, Notice of Custody Determination.
>
> 14. On June 8, 2026, Petitioner appeared before an Immigration Judge in Annandale, Virginia for a hearing on the merits of his application for relief. The Immigration Judge denied Petitioner's application and ordered him removed to El Salvador. Petitioner reserved appeal.
>
> 15. On July 9, 2026, Petitioner's order of removal became administratively final as no appeal was filed.
>
> 16. Absent the underlying habeas petition, ICE would be able to expeditiously effectuate Petitioner's removal to El Salvador.

(ECF No. 5-1 ¶¶ 6–16.)

### B. <u>Procedural Background</u>

On July 1, 2026, the Court received Petitioner's § 2241 Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1.) In his § 2241 Petition, Petitioner states that he was taken into immigration custody on March 6, 2026. (ECF No. 1, at 5.) Petitioner asks the Court "to order [his] direct release from ICE custody, pending a fair bond hearing, or, in the alterative, to order a fair bond hearing." (ECF No. 1, at 8.)

On July 27, 2026, the Court ordered Respondents to file a responsive pleading within twenty-one days. (ECF No. 4, at 1.) On August 17, 2026, Respondents filed their Opposition asserting that Petitioner is subject to a final order of removal, is detained pursuant to 8 U.S.C. § 1231, and the § 2241 should be dismissed. (ECF No. 5, at 1–2); *see also* EOIR, *Automated Case Information*, A-Number: 208-759-261, available at: https://acis.eoir.justice.gov/en/caseInformation (last visited Sep. 14, 2026).

On September 8, 2026, the Court received Petitioner's response. (ECF No. 6.) Petitioner asserts that he signed and dated the § 2241 Petition on June 19, 2026. (ECF No. 6, at 1 (citing ECF No. 1, at 9).) Petitioner contends that he filed a Form I-589 on July 3, 2018. (ECF No. 6, at 1.) Petitioner also asserts that in December 2016, his counsel helped him file a Form I-797c, G-28, and Form I-589 with USCIS. (ECF No. 6, at 1.) He states that he was a victim of fraudulent legal representation. (ECF No. 6, at 1.) Petitioner acknowledges his "bad behavior and bad choices," and indicates his rehabilitation efforts, including serving his sentence, following court processes, completing alcohol and drug abuse programs, and integrating into community. (ECF No. 6, at 2.) He requests reconsideration by the Court and seeks "direct release or another alternative [such] as ankle monitoring, supervision officer checks, fingerprints checks or so [on]." (ECF No. 6, at 2.)

Based on Respondents' arguments, it is appropriate to review the § 2241 Petition under Federal Rule of Civil Procedure 12(b)(1).

## **II. Standard of Review**

In a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenging the Court's subject matter jurisdiction, the burden rests with the petitioner, as the party asserting jurisdiction, to prove that federal jurisdiction is proper. *See Int'l Longshoremen's Ass'n v. Va. Int'l Terminals, Inc.*, 914 F. Supp. 1335, 1338 (E.D. Va. 1996) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). A motion to dismiss pursuant to Rule 12(b)(1) can attack subject matter jurisdiction in two ways. First, a Rule 12(b)(1) motion may attack the petition on its face, asserting that the petition fails to state a claim upon which subject matter jurisdiction can lie. *See id.* (citing *Adams*, 697 F.2d at 1219).

Alternatively, a Rule 12(b)(1) motion may challenge the existence of subject matter jurisdiction in fact, apart from the pleadings. *See Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *Int'l Longshoremen's Ass'n*, 914 F. Supp. at 1338; *see also Adams*, 697 F.2d at 1219. In such a case, "the district court may then go beyond the allegations of the [petition] and resolve the jurisdictional facts in dispute by considering evidence outside the pleadings, such as affidavits." *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 348 (4th Cir. 2009) (citations omitted). Consideration of evidence outside of the pleadings on a Rule 12(b)(1) motion does not necessarily convert the motion to one for summary judgment. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (citation omitted); *McBurney v. Cuccinelli*, 616 F.3d 393, 409 (4th Cir. 2010) (Agee, J., concurring in part and dissenting in part) (discussing that motions under Rule 12(b)(1) are not restricted by Rule 12(d)). However, "[t]he district court should grant the Rule 12(b)(1) motion to dismiss 'only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'" *Evans*, 166 F.3d at 647 (citation omitted).

The Court must dismiss an action if it determines that it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

## **III. Analysis**

Article III of the Constitution limits the scope of federal court jurisdiction to "cases" and "controversies." U.S. Const. art. III, § 2. "[R]ipeness, along with standing, mootness, and political question," are "doctrines that cluster about Article III" of the United States Constitution. *S.C. Citizens for Life, Inc. v. Krawcheck*, 301 F. App'x 218, 220 (4th Cir. 2008) (quoting *Allen v. Wright*, 468 U.S. 737, 750 (1984)). With respect to mootness, "a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969) (citation omitted). Further, "[i]f intervening

factual or legal events effectively dispel the case or controversy during pendency of the suit, [a] federal court[ is] powerless to decide the questions presented." *Ross v. Reed*, 719 F.2d 689, 693–94 (4th Cir. 1983).

Here, the basis for Petitioner's detention changed during the pendency of his § 2241 Petition. On July 9, 2026, the Immigration Judge's order of removal became administratively final when the deadline for appeal passed and no appeal had been filed. (ECF No. 5-1 ¶ 15); *see also* EOIR, *Automated Case Information*, A-Number: 208-759-261, available at: https://acis.eoir.justice.gov/en/caseInformation (last visited Sep. 14, 2026). Petitioner is now subject to a Final Order of Removal and is now detained pursuant to 8 U.S.C. § 1231. "Under § 1231, upon the issuance of a final order of removal to an alien, the alien shall be removed 'within a period of 90 days.' The alien '*shall*' be detained during the removal period." *Banoub v. Crawford*, 819 F. Supp. 3d 477, 486 (E.D. Va. 2025) (footnote omitted) (quoting 8 U.S.C. § 1231(a)(1)(A)).

For the foreseeable future, Petitioner's detention is mandatory. *See id.*

## V. Conclusion

Accordingly, Petitioner's § 2241 Petition will be DISMISSED AS MOOT. Respondents will be ordered to file a status report upon Petitioner's removal when he is removed or on October 15, 2026, whichever is earlier.

An appropriate order shall accompany this Memorandum Opinion.

/s/ MHL
M. Hannah Lauck
Chief United States District Judge

Date: 9/17/26
Richmond, Virginia